Good morning. Our first case on calendar is case number 24-4852. Brittany K. McDonald v. Oregon Health And Science University, et al. Counsel may approach. Judge Matsumoto, Judge Tong, Judge Hawkins, may it please this honorable court, I'd like to reserve three minutes for rebuttal time. May I proceed? Yes. A government employer's policy targeting religious beliefs as such is never permissible. Never means not even during a pandemic. Although the Oregon Health Authority's 2021 COVID vaccine mandate for healthcare workers allowed for religious exceptions, OHSU, acting through its officials, made clear that only employees with the so-called right beliefs would qualify. Where do they state that, sir? They stated that at 2ER, 551, 552, as well as 54, or excuse me, I take that back, 2ER, 125, and 26, and 139. They also stated that at 3ER, 549, and 551, 52. Would you say they described it as right beliefs, or did they just describe it would not qualify as a religious exemption? Isn't that what they did? They didn't say which beliefs were the right ones. They did come out with a list of which ones were the wrong ones. Chief among those, Your Honor, were objections based on the COVID vaccine's connection to abortion, which they denigrated specifically as personal moral choices and or conscientious objections rather than a tenet of a religious faith. And OHSU, acting through its officials, overstepped its constitutional bounds because that is a constitutional no-no. Where did your client work? My client worked in the mother-baby unit of OHSU. Would you describe that as a vulnerable population? I would, Your Honor, but that doesn't negate the fact. Would it be unreasonable for the hospital to determine it was a vulnerable population? I don't think it was unreasonable to determine it was a vulnerable population, but the issue here is it wasn't her position that disqualified her. It was her beliefs, and that was stated up front. And if you look at 2ER-139 and 3ER-549. She wanted to work in a vulnerable population that included mothers and babies, and she wanted to do it, how, masked? With PPE, or excuse me, personal protective equipment, as well as regular COVID testing as she had done throughout the pandemic. And isn't it factually correct that the hospital was understaffed in that particular area? Yes, which is all the more reason why they could have could and should have accommodated her. And I believe if you look, looking at this, the fact of this case in the light most favorable to Ms. McDonald, as this court must, for purposes of both the OHSU's motion to dismiss her 1983 claim as well as its motion for summary judgment on her Title VII claim, that the OHA specifically allowed for religious exceptions because it recognized that there were a number of employees who would be, who would seek religious exceptions and hospitals, which were already overflowing with patients and understaffed, would find themselves even more so overworked and understaffed. Counselor, you're bringing two separate claims, right? You have a constitutional free exercise claim. That is correct. Pursuant to Section 1983. And you also separately have a Title VII reasonable accommodation claim. That is correct. Okay. And the qualified immunity argument pertains to the constitutional claim, correct? That is correct. And I believe the OHSU officials should be stripped of qualified immunity in this circumstance because any reasonable person in the OHSU official stead would have known that they cannot show hostility toward religious beliefs. You know, if you look at Dodge V Evergreen School District, it says that the contours of the right need to be made clear. And if you look at my brief, I outlined four areas where the contours exist. One of those is there's a number of cases in which the Supreme Court recognized that opposition to abortion can be and often is religious in nature. There was another set of cases, most of them involving unemployment benefits, which says that the government cannot act as an arbiter of scriptural interpretation, saying, you know, they can't determine what is a religious belief and what isn't, which is what OHSU did here. The third set concerned hostility toward religion that we're talking about, Lakoumi and or Church of Lakoumi, Babalu Eye and Masterpiece Cake Shop versus Colorado Civil Rights Commission. And lastly, there are cases involving public health crisis, including the COVID pandemic. And the one case that I consider most instructive there is one this court has already applied in other cases, which is Roman Catholic Diocese of Cuomo, the diocese or Roman Catholic Diocese of Brooklyn v. Cuomo. Assuming we stipulate for a moment that we agree with you there, that there is a clearly established right to not be discriminated against in that manner. You may still lose on your Title seven claim. Right. If if the state is able to show that it would be it would impose an undue hardship on them in order to accommodate your client. Well, Your Honor, there if they if they could show it's an undue hardship. Yes. But I do believe that there is a tribal issue of material fact on that point. The Supreme Court said in Graffiti de Joy that a hardship based on hostility toward religion or religious practice or to a religious accommodation cannot be considered undue. But wasn't it based on scientific evidence of the virulent nature of the Delta variant, the fact that it was more transmissible, the fact that people got sicker and had worse outcomes? And this is in the height of the pandemic. So whether it's under an undue hardship, which you said, yes, they were understaffed. People were falling ill, both patients and staff and an unvaccinated nurse who had hands on contact with vulnerable babies, mothers and others who are immune compromised, that that was too much of a hardship to risk further staffing shortages and bad patient outcomes. That was a post hoc assertion. OK, that doesn't negate the fact of the assertion that OHSU made up front. And even when, you know, I again point the court to 2 ER 139 and 3 ER 549, where it said it was her position or excuse me, not her position. It was her beliefs, not her position that disqualified her. And OHSU asserted after the fact. And, you know, I believe that raises a tribal issue of material fact concerning what were the real hardship was here, whether that was protecting the people in the mother baby unit or whether it was accommodating her specific beliefs, which, you know, is which if it's they targeted her specific beliefs and disqualified her up front based on that. And so I do believe there is a tribal issue of material fact on that point. But aren't you conflating two steps of the Title seven analysis? The state has already conceded for purposes of Title seven that there was a prima facie case of a religious burden. And therefore, the inquiry is focused on the undue hardship. So we're in undue hardship now. And going to Judge Matsumoto's point, hasn't the state provided a lot of evidence? And the district court found that the evidence you wanted to proffer were was inadmissible. Well, I don't know about inadmissible. I would say that there is a tribal issue of fact. It concerns credibility. It concerns credibility. They shouldn't be given a pass here just because they claim to be protecting the public. I refer this court to Bregman v. Abbott, which is a Supreme Court case from the late 90s. It involved a dentist who refused to provide treatment for HIV positive patients. You know, he said he had a reasonable good faith belief based on info from the entities from the American Dental Association, as well as the CDC, that and that it was a highly contagious disease. He didn't want to have it spread at his office, understandably. And these Supreme Court said, no, that doesn't necessarily absolve him of liability. And it also said that even though he's a dentist, you know, he shouldn't be given any deference on that point. And neither should OHSU here. So, I mean, I mean, that's just very much the. So, I mean, again, going back to Groff, Groff said that, you know, any hardship based on, you know, animosity toward a specific belief cannot be considered undue. You know, if it was, you know, if animosity toward a certain religious belief would be what constituted offense, Title seven, then Title seven would be at war with itself. I mean, the whole point of it is to. And this court has recognized that very wisely. I might add that the public's interest in protecting religious liberty was very, was equally compelling to this of the public interest in stemming the tide of the pandemic. And I ask that the Supreme or excuse me, that this court rule likewise here. Counsel, you didn't bring a Title seven discrimination claim. All right. By discrimination claim, you're talking disparate treatment, intentional discrimination. OK, you're talking about something with different elements than a failure to accommodate claim. Right. Separate from the failure to accommodate. That is correct. I think at one point I did want to try and amend my complaint, you know, but Judge Emerget kind of made clear that that wouldn't happen. So I wound up withdrawing my. So that's not before us. It's not before us. However, I would like to put a simple question to answer counsel. It's not before us. It is not before us. There is, however, a case that I would like to bring your attention to, which is EEOCV Abercrombie and Fitch stores, which it says that a failure to accommodate claim is a disparate treatment claim. So, I mean, the Supreme Court recognizes two types of claims under Title seven, which are district, disparate treatment and disparate impact. And, you know, a failure to accommodate claim falls into the former category of district treatment. And because of that, the motive of the employer matters. You know, even for even though it might not be an element of a failure to accommodate claim, it's still relevant to the analysis. So if you don't have any further questions, I'd be happy to use my remaining time and tack it on to my rebuttal, if that's OK with the court. Yes, thank you, counsel. Welcome. Good morning, your honors, and may it please the court. I'm Whitney Brown on behalf of you. In the middle of a global pandemic, you enacted a vaccination policy requiring all employees who work in person to be vaccinated for COVID-19 unless they received a medical or religious exception. It did so on the basis that allowing employees to continue to work in person while unvaccinated would pose untenable health and safety risks and operational costs. The issue on appeal, as your honors have indicated this morning, is very narrow. Did the district court decide correctly, decide that evidence of intentional discrimination has no bearing on the limited question of undue hardship? The answer to that question is no. There is, of course, also a qualified immunity issue. I do not intend to address that issue unless the court has specific questions about it. I do have specific questions about it. The policy, as I see it in the record, and I'm on ER 551. Council pointed to different ER sites that may be redundant, but the policy states that examples of beliefs that do not qualify for a religious exception include an objection to the vaccine on the basis of fetal cell concerns. So the plaintiff here has alleged that the use of fetal cells derived from abortive fetuses poses a religious problem for her. She's objecting to that on a religious basis. But the policy says we're not treating that as a religious objection at all. How is that not a violation of a clearly established right? Yeah, a couple of points here, your honor. To begin, the record on this point is very thin. All we have is the language of the policy. And the reason that the record is thin is because Ms. McDonald did not raise an intentional discrimination claim. She didn't challenge or she didn't indicate that we needed to evince evidence of how religious exceptions were treated in practice. So we don't actually know how the policy was applied. I see the language that your honor is referring to, and I understand where your honor's concern comes from, certainly. But what the record also reflects is that exception requests were given individualized assessment. And I think the point that I want your honors to realize is that there were a lot of requests coming in at the same time. And OHSU, I think, reasonably had concerns about whether all of them were motivated by bona fide religious belief or instead by sort of personal convictions or, frankly, by misinformation. So the language of this policy, perhaps imperfectly, was trying to be educational and informative and transparent that a bare statement to the effect that, you know, something about fetal cells or that someone had a personal revelation from God without more wouldn't qualify. Do they have evidence that, according to their policy, no fetal tissues or cells were contained in any of the vaccines currently available under the FDA approval? And also, do they present evidence that other cell lines were created and used in sort of over-the-counter type medications like Tylenol, Advil, Aspirin, Claritin, Benadryl, et cetera? That was part of the OHSU policy explaining their views about the belief that one wouldn't want to use fetal cells. And I think, first, they try to refute that there are fetal cells in the current MNRA regimen. And then they go on to say, to the extent some of these other cell lines were used, they are in common over-the-counter drugs that had been available for years. That's correct, Your Honor. And we didn't challenge, for purposes of the summary judgment motion, we didn't challenge the fact that she raised a prima facie case. Had we known, for example, that she would try to inject some kind of animus analysis into the undue hardship analysis, we might have challenged the sincerity of her religious belief, for example, on the basis that she didn't explain whether she's also avoided other common medications like the ones that Your Honor points out that are indicated in the policy. So you're saying that the policy, despite its sort of categorical phrasing, again, it says an objection to the vaccine on the basis of fetal concerns do not qualify for a religious exception. These professed beliefs are personal moral choices and or conscientious objections rather than a tenant of a religious faith. Sounds pretty categorical to me, doesn't it? You have correctly read the policy, Your Honor, but again, I think that the totality of the record here, including the evidence that exception requests were given individualized assessment, contradicts the idea that there was some kind of categorical determination happening. And of course, even if this court is concerned about the neutrality or in general applicability of the policy, it is undeniable that OHSU had a compelling state interest in stemming the spread of COVID-19. That's the Roman Catholic Diocese case from 2020 from the Supreme Court. OHSU is a flagship hospital in the state of Oregon. It was in the middle of a historically unprecedented global pandemic. And and and this was the policy that they put forth. And we believe that it was it was constant. Are you defending the policy or are you are you not? I seem to hear two different arguments. One, there is this policy. I've read it correctly, but it may depend on some factual nuances of how it is applied person to person. But now you're making it appears a defense of the categorical policy. Which is it? Well, the the constitutionality of the policy, I wouldn't say is directly at issue here. But, yes, we're defending the constitutionality of the policy. There is no question that there is a compelling state interest that OHSU had to enact to enact such a policy. And is there a compelling state interest to not treat a person's religious subjection to the use of fetal cells and vaccines as not religious at all? No, Your Honor, there's a compelling state interest in controlling the spread of COVID-19. And and the purpose of the policy, again, writ large, was to ensure that the people who were working in person in its hospitals were were not going to expose other patients or other employees to the vaccine. Right. But the basis for rejecting her religious exemption wasn't because this vaccine policy would satisfy strict scrutiny or satisfy a compelling interest. It rejected her claim at the threshold. Right. There's a letter to an ER 549 to Brittany stating that, again, repeating the language in the policy examples of beliefs that do not qualify for a religious exception, including objection to the vaccine on the basis of fetal concerns. So we've got a policy, we've got an application of the policy, and it's based on the claim that at the threshold we are not even going to consider your objection as religious at all. That's not correct, Your Honor. We don't know why her particular exception request was denied. Again, we didn't evince evidence about it because it was unnecessary. Ms. McDonald did not evince evidence about it because I don't know why. But the point is that that that the policy is neutral and generally applicable as applied and there's no evidence to the contrary in the record. Is there evidence in the record that that Ms. McDonald's objection was religious in nature as she has pled it? Again, we did not dispute that at summary judgment. So so no, there's there's no there's no evidence to the contrary. Although, as we indicate in our briefing, there are some indicia of of insincerity. We didn't pursue those for purposes of summary judgment because we were confident and are showing on undue hardship. And did she ever say this is the reason for my objection? She provided about a five or six page statement explaining include the use of fetal tissue and vaccine. It did. Yes, Your Honor. Unless the court has further questions, I'm inclined to rely on our briefing. Thank you, Your Honor. Thank you, counsel. Your Honor. You know, one of the things that you argued is that there was an unpleasant or it preceded a flood of religious exception requests. My argument, Your Honor, is that it's no excuse. In Masterpiece Cake Shop, the Colorado Civil Rights Commission of the Supreme Court said the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the beliefs of affected citizens. That is an absolute. Even during a pandemic, OHSU officials impose and enforce regulations hostile to specific religious beliefs here. And Mrs. McDonald clearly was an effective citizen. The bottom line is that the government cannot doesn't get to say, you know, you because we are OK with your religious beliefs, you qualify you because we disfavor your religious beliefs. You do not. Now, you know, it's a you know, as you get as you your honors all know, you know, when it comes to, you know, even assuming that there is a compelling interest, it has to be narrowly tailored. And it's not narrowly tailored if it if it permits some some activity that would otherwise be objectionable and and lets other and substantially burdens others. You know, Ms. McDonald was substantially burdened here because she was put in the position of having to choose between fidelity to employment and fidelity to her sincere religious beliefs. She was and there was no narrow tailoring. You know, if somebody just, you know, if you pick a given religion, be it Jehovah's Witnesses or perhaps Christian scientists who object to certain types of vaccines or vaccines in general. You know, if if they were if they would qualify for that religious exception, then my client specifically should qualify for a religious exception as well. You know, this this. The policy for OHSU is neither neutral nor generally applicable. It's not generally applicable because it invited them. It not only invited them to make the to consider the particular reasons for the request. It specifically said, if your religions are X, Y, if your reasons are X, Y and Z, you will be disqualified. And it didn't matter what position they were in. If you look at I believe it's footnote number three in my reply brief. Even employees at OHSU who were who worked remotely were disqualified based on certain beliefs. So. So, you know, it's. And to be clear, Title seven doesn't allow it either. Title seven makes it allowing them to, you know, basically say, you know, we disqualify you based on your beliefs and then justify it after the fact. It's. It would undermine the whole purpose of Title seven and the whole purpose of Title seven is to, you know, is to prevent employees from having to make the Hobson's choice of, you know, violating their sincere religious beliefs to maintain their employment and losing their job just out of, you know, out of honoring their God. So with that, I'll be happy to answer any additional questions you might have. Thank you, counsel. The case is submitted.
judges: HAWKINS, TUNG, Matsumoto